Good morning, your honors, and may it please the court. My name is Joshua Hopstone. I'm counsel for the appellant in this matter, Seaboard Produce Distributors. This is an appeal from a memorandum of opinion by the bankruptcy appellate panel reversing a summary judgment that was issued in bankruptcy court. What we're trying to do in this case is to hold the respondent, Cristie Tolotti, accountable for the wrongful destruction and taking of property owned by my client. There are a few legal issues I should say at the outset. I wish to reserve two minutes of rebuttal time. There are a few legal issues raised in the BAP's opinion that I wish to address, but I think the natural point for a discussion about this case is that which is not disputed between the parties. Keep your voice up, OK? Certainly. Specifically, the underlying conduct which gave rise to this action. At the summary judgment stage in bankruptcy court, the respondent did not dispute the nature or the extent of the damage that she inflicted upon the property during a time when she admits that she had no interest in the property. Acknowledging that she did not concede or she did dispute that she harbored a willful and malicious mental state at the time she took these actions. There is no dispute between my client and the respondent or the bankruptcy court or for that matter the bankruptcy appellate panel that Ms. Tolotti wrongfully inflicted extensive damage to this property, removed fixtures during a time she knew she had no entitlement to the property. And when I say fixtures, it's important to understand that this is not just talking about, you know, removing a barbecue or removing a refrigerator or something that reasonable minds could disagree about whether it's part of the realty or an item of personal property. You know, Ms. Tolotti ripped out the toilets, the sinks, the sink fixtures, the faucets, the bathtubs. You know, she ripped out the kitchen cabinets out of the kitchen. She tore the HVAC system. She tore out HVAC ducting out of the walls. She ripped out the fireplace mantle and the water heaters and the garbage disposals and so forth. In so doing, again, this is undisputed, these actions by the respondent. In so doing, she inflicted substantial additional damage, smashed holes in the wall. You got a default judgment against her in superior court, correct? Yes. Yes, we did. So you want to use that judgment, that default judgment as collateral estoppel in the bankruptcy court action to not allow discharge of the debt. Precisely, Your Honor. A long line of California cases and Ninth Circuit cases says that that is the rule. It's important to note that this is not, you know, a pure play default situation where the defendant could not be located. No, she didn't cooperate with the discovery. She got a sanction and her answer was stricken or her default was entered. And that amounts to an admission of all the allegations in the complaint, all the material allegations in the complaint. That's exactly right, Your Honor. And you had to do a prove up. Yes. And the one point of contention with respect to your comment about material allegations in the complaint is that the state court complaint expressly alleged that Ms. Talati's willful and malicious action caused substantial injury to my client. It states that expressly and in multiple places. But on this issue of notice, which is an issue that the BAP raised and that Ms. Talati seized upon in her briefing before this court, the importance of the procedural history in this case really cannot be understated. I think it's easy a lot of times for courts, certainly for litigators to kind of breeze over the procedural posture. But in this case, the genesis of this dispute was an adversary proceeding initiated under Section 523-A-6. The state court complaint came after the adversary proceeding was initiated in bankruptcy court. My client filed the complaint to determine non-dischargeability under Section 523-A-6, expressly alleging that the conduct that is the subject of this case, seeking to have that determined non-dischargeable. It was pursuant to a stipulation of the parties signed by the respondent that the issue was that the stay was lifted and the issue remanded to state court for adjudication. The state court complaint, in all material respects, was virtually identical to the adversary complaint filed in bankruptcy court. Yeah, but for purposes of obtaining a judgment in superior court on conversion and waste, her mental, whether she maliciously intended to injure the property is not a necessary element in order for you to prevail on those waste and conversion claims. That is true, Your Honor. It's undeniable. It's not. So, you know, after the default proceeding, you know, you just had to prove up the amount of your damages to the superior court judge. She was going to grant you judgment. And then she says, here, prepare the judgment. And then what you do is you just basically take everything from the complaint and put it into the judgment and then she signs it. Your Honor, what is that? First off, the state court is entitled to rule on anything properly pleaded in the complaint. The respondent was on notice of those, of those allegations in the complaint. But as the Ninth Circuit case law makes clear, willfulness and malice may be inferred from the nature of the acts themselves. So we didn't need Ms. Talati to stand up, take the stand and testify that I had a malicious intent in order to find malice. The state court properly adjudicated what it believed to be her intent. Did you ask for punitive damages in the provo? No, and I don't believe that it is necessary to do so. So why was it necessary for the district, for this, for the superior court judge to say anything about malice when your claims were for conversion and waste? Again, while it is not absolutely necessary for a state court to make a finding of malice in order to sustain a common law cause of action for waste and conversion, nothing in the law of collateral estoppel prevents it from doing so. And nothing in the law of collateral estoppel provides that a subsequent court as a matter of law must, is prohibited from considering those facts. You know, then this, this notion of the necessarily decided element of collateral estoppel was misapplied by the BAP in this case. What that element mean, it, that element is an alternative to the express findings requirement. And in the interest of time, you know, this was briefed extensively, but going back a hundred years to the original California Supreme Court doctrinal cases on collateral estoppel, Williamson's estate provides that in the, even a, even a prior judgment, which is silent as to a particular fact may nevertheless be entitled to collateral estoppel effect in a subsequent proceeding, if the finding in question was necessary to sustain that judgment. It does not mean the flip side, which is what the BAP held here, which is that anything that is absolute, anything that is not absolutely necessary to sustain the judgment must as a matter of law be disregarded. That's not the law. No case, state or federal law has made such a finding. And we posit that the BAP erred and applied an incorrect legal standard in so ruling. Now, the bankruptcy judge found that collateral estoppel did apply. Yes. And what was the specific finding on intent? The state court judgment sustained the allegation. Oh no, that the bankruptcy. The bankruptcy court. Judge May. Adopted the. You, you, you, you, you, you drafted it. Uh, it was not me personally, but a trial counsel did. Yes. Well, that's all right. Um, what's, what's the, uh, finding, um, on specific intent? Um, I could, uh, I could point to the court and the record, but, um. You know, I can't. You know, there's something wrong with the acoustics in here as far as. Okay. I'll try and stand closer. I apologize. I could find the exact page in the excerpts and I'll have it for you in rebuttal, but essentially it found, it sustained the allegations that Ms. Talati acted willfully and. Well, show me the words. Okay. I, I, I can find it in a, in a moment. Um, uh, you know, I'm watching my time tick away. I'm going to find that page for you and present it on rebuttal. I'm watching my second. Why don't you look, why don't you sit down and look for the page that judge, uh, Pregerson would like you to point to in the meantime, we'll hear from the other side. Yes. How's that? Okay. I don't want to put you under any, you know. Good morning, your honors. Michael Berger from the Law Offices of Michael J. Berger on behalf of the defendant, uh, Ann Apley, Kristi Talati. It seems to me that the court understands the issues and gets it. And that the BAP exactly understood the issues and ruled correctly on our points. He's busy looking over there for the, for the, this particular language and the judgment from this superior court. But do you have it handy? I don't, your honor. You don't have it handy either. No, I was at that hearing and the judge just adopted. I mean, the key document in this whole case are the findings that the superior court made. Well, I have that. So let me be clear. Are you asking for the superior court's findings or the bankruptcy court's findings? Do you have the findings of the superior court? Or the judgment in the superior court? Yes. All right. I do. And let me see if he's right about saying 135, your honor. Well, I have the, I have the default judgment that was signed by Judge Riley. Yes, I've got that too, your honor. Okay. So why, if you go to paragraph seven on page six of the judgment. I've got it now. Yes. Why isn't the finding in taking the above actions, the court finds that defendants acted deliberately, willfully, and intended to cause injury to plaintiff's security and impede plaintiff from obtaining physical possession of the property. So the, that. Why isn't that entitled? Why isn't that sufficient for the finding under 523A? Sure. So the BAP answered this question and I will give you the same answer. The first thing they told you was that it's a different willful and malicious. That the words are the same, but they don't mean the same thing. That in order to make a finding under 523A6, it's something different from in state court. And that's an important distinction. The second thing they said is that for collateral assault. So wait, stop right there. Why does this fail to meet the standard that's required under 523A? Sure. So for example, one of the things that was alleged that my client did wrong was that they took legal proceedings to try and avoid being evicted. They answered the unlawful detainer. They filed an appeal. They filed a writ. They filed bankruptcy. Now those things are all willful. So you can find that they were willful actions. They also took a barbecue and that was willful and deliberate, like it says here. But it's not malicious injury under the bankruptcy code standard. Why would anybody take a new toilet out of a house? Is there someone down there? I mean, the clerk there? Yeah. Can we play with this, these microphones? What? I can speak very loud. I'll just speak louder. I'm not talking to you. I'm talking to him. Can you try adjusting the volume in front of you? I tried. It's at maximum. It's the size of those. No, it's not the volume. It's the quality. I'll give Richard a call. Give Richard a call. Have him come up. Yeah. All right. Just speak into that mic. Not over to the side, right there, right into the mic. What are you going to tell me? Let me address this thing about the toilets. Look, look. There was a finding of willful and malice under 523A6, and both of them are deliberate and intentional torts. So, Your Honor, I have to disagree. And then you got waste, unlawful act or omission by a person in possession of real property that results in permanent injury to property. Conversion, wrongful exercise of dominion over the property. Look at the meaning of those words. Let me address directly. So, first of all, the finding that was made in Superior Court was not a finding under 523A6. We all agree on this. It's all the same. It's the same when you're talking about malice. I disagree, and I'd like to explain why. Look, most of these cases where there's a default judgment, you know, I've never seen one where there was a default judgment, and then the people come in and create all these problems day after day and drag this thing out, deliberately. That's what happened here. So, let me respond, Your Honor. There's a couple of ideas floating around. One is the actions of my client. When somebody goes out and doesn't water avocado trees and wants them to die, what do you call that? You think they didn't deliberately intend to destroy those trees? So, my client had nine acres of avocado trees, and the water bill's like over a thousand bucks a month. Once you get away from the microphone, maybe we can hear you better. All right, is this better? What? Can you understand me more clearly? Get over to the microphone. What? All right. My client had nine acres of avocados, and the bill to water that was more than a thousand dollars a month. Get that over there, you'll sound better in front of the microphone. And they didn't have the money. It's not willful and malicious injury to not water trees. This is one of the problems with the state court judgment that I argued to Judge Riblett. It's a mix. Some things my client did, I think, were just clearly wrong. What does willfulness mean? Well, it means different things in different contexts. In the state court, it seems to just mean intentional, that it wasn't an accident, that you meant to do it. But in bankruptcy court, it's like you ran over someone. She was sleepwalking when she did it? Is that what you're telling me? Oh, no. So, willful and malicious injury is an interesting area, since you mentioned that. I am a certified specialist in bankruptcy law, and I've litigated a lot of these cases. And it used to be that it was really clear. The example I would give is that you ran someone over, you put your car in reverse, and you ran them over again. I think there's no question, when you run them over the second time, that's too much. But I had never seen a case that said not watering trees is willful and malicious injury. That went too far. So the bankruptcy court... There's a whole course of conduct here, a whole course of conduct that went over time and time. I don't have the exact chronology here, but that's what she did. She set out to destroy that property. She ripped everything out of the house, you know, just deliberately. So it was pointed out here that, you know, this judgment was written not by the judge, but by plaintiff's counsel. Plaintiff's counsel copies the complaint and puts in all the allegations. But there was no finding, no testimony, no hearing. They got whatever they wanted. They said it's $300,000 for trees. Wait a second. When the default was entered, it was an admission. It became an admission of the allegations in the complaint. Right. But as the appellate court pointed out, the complaint did not deal with 523A6. They used words, but there was no admission. Wait, that's the problem here, because there was a finding. I mean, there was a specific clause or paragraph in the judgment of the Superior Court that says that the court finds that defendants acted deliberately, willfully, and intended to cause injury to the plaintiff's security. Right. And I'm. Why isn't that the same inquiry under that last part about intent to cause injury to the property? Why isn't that the same as injury to the property under 523? So the BAP had several reasons. The first reason they said is there was no notice to my client because that wasn't in the complaint. The second reason they had. This is a Superior Court complaint for conversion and waste. Right. But as you, Your Honor, pointed out, when you sue someone for waste, you don't need to get into their subjective state of mind. You don't need to prove what you have to prove to make a case non-dischargeable. Hold your fire for a minute, would you? Yes, Your Honor. OK. Now, your client had notice of the state litigation, and that went on from December 21, 2011 to May 2013, 17 months. She failed to show up for five different depositions. This is not the ordinary type of default judgment. The judges got fed up with her and the judge declared a default judgment. Is that right? That is correct, Your Honor. She was there. So that's what the judge did. The judge entered the default. But that judge did not decide dischargeability of debt. That judge could decide $600,000. But taking her conduct into consideration here, and you look at some of the definitions of what she was charged with, her conduct was intentional. She intended to destroy those trees. I mean, it's clear to me. Maybe you never raised an avocado tree. I never have. I tried one in a cup, Your Honor. I raised one in a cup. You know, you put the plant and the toothpicks on the pit. Yeah, I know. You've got a seed someplace. But I'm not a farmer. What? I'm not a farmer, so I don't really know. Well, you better become one someday. Maybe. So that's what she did. And that's why default was entered. This is not an ordinary default situation. This is one that's created all kinds of problems for the judge. The person doesn't show up for depositions, doesn't obey the court's order, and this goes on for 17 months. 17 months. The only point I'd make in the end is that there's a difference between dischargeability of debt and the debt itself. It's too late for my client to say that she doesn't owe the $600,000. And the BAP was clear on that. A lot of issues were decided by that default. Causation and damages. The BAP isn't right all the time. I understand. Who was the bankruptcy judge here? The underlying judge was Robin Riblett in Santa Barbara. One of the best ones we had. Well, thank you. I like her as well. Yeah. I'm glad you do. You've got some sense anyway. This is an aside. Her husband's a runner and a race manager, and I'm a runner as well, so I know them from running as well as bankruptcy. I've used up my time, but I'll answer any other questions if you want me to. That's fine. Thank you, gentlemen. Your Honor. That's fine. Thank you. What are you going to do now? Okay. Huh? You were absolutely no help to us. You're not thinking. I have several points I'd like to raise. If there are any specific questions I can address first. What are you going to say? As to the distinction between willfulness under California and BK law, this is something the BAP tried to do to water down the state court's expressed findings of willfulness and malice below a threshold of dischargeability, and it did so by sort of daisy-chaining these definitions. Willful means willful misconduct, and willful means conduct means negligence. That's not the law of the state of California, and that is not what occurred in this case. Counsel's effectively testifying to what the water... Are you arguing against yourself now? No. No? Nothing in the record to support comments of what the water bill was going to be. These sorts of arguments. If she had an opportunity to respond to the substance of the allegations against her in the state court, she forfeited that opportunity by disobeying court orders, numerous independent court orders to compel her appearance. She flat-out refused to participate or appear, and now several years later is asking for a chance to come into BK court and re-litigate these same issues that were removed. She stipulated were removed for the purpose of avoiding duplicative agreements. Thank you. You're welcome. We've got it. Thank you. Thank you. Matter submitted. Okay, our last case for argument is Casas v. Victoria's Secret.
judges: Pregerson, Noonan, Paez